UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CARLOS BAYON,

               Plaintiff,

       v.                                       17-CV-373
                                          ORDER

STATE UNIVERSITY OF NEW YORK AT
BUFFALO AND/OR THE STATE OF
NEW YORK, UBMD ORTHOPAEDICS &
SPORTS MEDICINE, AND BUFFALO
GENERAL MEDICAL CENTER AKA
KALEIDA HEALTH,

               Defendants.

_____

       The pro se plaintiff, Carlos Bayon, has filed a complaint asserting claims under

42 U.S.C. § 1983.  Docket Item 1.  He also has moved to proceed in forma pauperis

(that is, as someone who should have the prepayment of the ordinary filing fee waived

because he cannot afford it) and has filed the required affidavit.  Docket Item 2.

       Because Bayon meets the statutory requirements to proceed in forma pauperis,

28 U.S.C. § 1915(a), his request is granted.  As a result, the Court has screened the

complaint under 28 U.S.C. § 1915(e).  For the reasons that follow, Bayon's claims are

not legally sufficient to proceed and are dismissed – with prejudice against the State

University of New York at Buffalo ("SUNY") and the State of New York, but without

prejudice and with leave to amend against UBMD Orthopaedics and Sports Medicine

("UBMD Ortho") and Buffalo General Medical Center ("Buffalo General").

**DISCUSSION**

**I.    IN FORMA PAUPERIS**

A party seeking to bring a civil action in federal court ordinarily is required to pay a $350 filing fee under 28 U.S.C. § 1914 and an additional administrative fee of $50. *See Wagoner v. Ciocca*, 2016 WL 5720827, at *1 (W.D.N.Y. Sept. 30, 2016).  But a litigant may ask to avoid the payments by moving for leave to proceed in forma pauperis.  *See* 28 U.S.C. § 1915(a)(1) (2007).

The court evaluates a litigant's financial status to determine whether he or she is eligible to proceed in forma pauperis under § 1915(a).[1]  To be eligible, an applicant must complete an affidavit demonstrating that he or she meets the requirements in § 1915(a).  More specifically, applicants are not required to "demonstrate absolute destitution," *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983), but must establish that they cannot afford to pay for both the necessities of life and the costs of litigation.  *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).  Because Bayon meets the statutory requirements of 28 U.S.C. § 1915(a), Docket Item 2, he is granted permission to proceed in forma pauperis.  Therefore, under 28 U.S.C. § 1915(e)(2)(B), this Court screens the complaint.

---

[1] 28 U.S.C. § 1915 addresses leave to proceed in forma pauperis.  That section's requirement that "the prisoner" provide a statement of all assets that he or she possesses does not preclude non-prisoners from proceeding in forma pauperis in federal court.  *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275-76 (6th Cir. 1997).  "Only prisoners, however, have the additional requirement of filing a prison trust account" under 28 U.S.C. § 1915(a)(2).  *Id.* at 277.

## II.     SCREENING THE COMPLAINT

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  Under § 1915, the court "shall dismiss the case at any time if the court determines that [it] . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "The settled rule is that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 148 (2d Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  But leave to amend a complaint should be denied if any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In evaluating the complaint, the court must accept all the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted)).

### A.     The Complaint's Allegations

A liberal reading of the complaint here tells the following story.  On January 5, 2017, Bayon went to the offices of UBMD Ortho for a scheduled appointment.  Docket

3

Item 1 at 2.  Upon arrival, Bayon was asked to present, and presented, his driver's license for identification.  *Id.*  But when Bayon saw that his license was going to be scanned or copied using an electrictronic scanner, he instructed the office staff "not to do it."  *Id.* at 2-3.  In response, the office manager told Bayon that he could not be seen until he complied.  *Id.* at 2.  After some back and forth, the office manager explained that it was UBMD Ortho's policy to scan or copy a patient's driver's license before the patient's scheduled appointment.  *Id.* at 3.  Because he was in need of medical care and in extreme pain, Bayon allowed the office to scan or copy his license.  *Id.* at 2.  At some point, UBMD Ortho claimed that Bayon's medical records and information "belong[ed] to them, to do as they please."  *Id.* at 3.

A few months later, Bayon went to Buffalo General for a scheduled appointment at the allergy clinic.  *Id.* at 3.  Prior to this visit, Bayon had been to the clinic three times without "notifications, incidents or demands" from the hospital or the hospital's security guards.  *Id.*  This time, however, the receptionist told Bayon that if he did not let the office scan or copy his driver's license, he could not enter the hospital.  *Id.*  After refusing to comply, Bayon was escorted from the clinic by a security guard.  *Id.* at 4.  Like the staff at UBMD Ortho, the staff at Buffalo General told Bayon that his medical records and information "belong[ed] to them, to do as they please."  *Id.*

Bayon sued the defendants for violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  He also sued under § 1983, claiming that the defendants engaged in an unlawful search and seizure and deprived him of his due process rights.  *Id.*

4

Bayon's allegations are insufficient to survive screening under § 1915(e), and his claims against SUNY and the State of New York are dismissed with prejudice.  But because he is pro se, Bayon will be given an opportunity to remedy the insufficiencies in his claims against UBMD Ortho and Buffalo General.

**B.   Analysis**

**1.   Section 1983 Claims Generally**

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To plead a valid § 1983 claim, the plaintiff must allege that the defendants are "persons," *see Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir. 1990), *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 60-71 (1989), acting under color of state law.  *Whalen*, 126 F.3d at 405.  Traditionally, the "definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted).  In a § 1983 action, "the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are

identical." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). So to constitute

state action, "the allegedly unconstitutional conduct [must] be fairly attributable to the

State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 41 (1991).

While § 1983 provides a "federal forum to remedy many deprivations of civil

liberties . . . it does not provide a federal forum for litigants who seek a remedy against a

State for alleged deprivations of civil liberties," *Will*, 491 U.S. at 66, because, under the

Eleventh Amendment, states are generally immune from suit in federal court.[2] For a

state to be sued under § 1983, Congress must have abrogated immunity or the state

must explicitly have waived its immunity and consented to suit in federal court. And the

immunity of a state extends to "'state agents and state instrumentalities' that are,

effectively, arms of a state." *See Woods v. Rondout Valley Cent. Sch. Dist, Bd. of

Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*,

519 U.S. 425, 429 (1997)).

Private entities, on the other hand, do not act under color of state law unless

"there is a sufficiently close nexus between the State and the challenged action of the

. . . entity so that the action of the latter may be fairly treated as that of the State itself."

*Am. Mfrs. Mut. Ins. Co.,* 526 U.S. at 52 (internal quotation marks and citation omitted).

Whether this nexus exists "depends on whether the State has exercised coercive power

or has provided such significant encouragement, either overt or covert, that the choice

---

[2] The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

must in law be deemed to be that of the State."  *Id.*  "Action taken by private entities with the mere approval or acquiescence of the State is not state action."  *Id.*

Further, "[l]ike the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  *Id.* at 50 (internal quotation marks and citation omitted).

### 2.  Bayon's § 1983 Claims

Here, Bayon has sued the State University of New York at Buffalo ("SUNY") and/or the State of New York (the "State"), UBMD Ortho, and Buffalo General.  Each defendant is discussed in turn.

#### a.  State of New York

Under the Eleventh Amendment, the State of New York may not be sued under § 1983 unless it has explicitly consented to suit or Congress has specifically abrogated the state's immunity.  *See Will*, 491 U.S. at 66.  Neither of those two things have happened here.  *Id.* ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity. . . ."); *Sathue v. Niagara City Police Dep't*, 2018 WL 550520, at *4 (W.D.N.Y. Jan. 25, 2018) ("New York state has not consented to suit in federal court. . . .") (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1970)).  Therefore, Bayon's claims against the state are dismissed with prejudice.

#### b.  SUNY

"For Eleventh Amendment purposes, SUNY is an integral part of the government of the State of New York and when it is sued the State is the real party." *Dube,* 900 F.2d

at 594 (internal quotation marks and citation omitted).  Therefore, because the state

cannot be sued, this Court also must dismiss Bayon's claims against SUNY.  *See id.*

Those claims are therefore dismissed with prejudice.

c.     *UBMD Ortho*

Although the name "UBMD Ortho" may imply a connection to SUNY, the Court's

inquiry at this stage is limited to the pleadings, and Bayon has not alleged a relationship

between the state and UBMD Ortho.  For example, while Bayon has alleged that the

surgeon who treated him there also is a professor at SUNY, that does not establish

whether UBMD Ortho is a part of SUNY or a private entity.  If it is a private entity, UBMD

Ortho cannot be sued under § 1983 unless there is a sufficiently close nexus between

the state and UBMD Ortho to make UBMD Ortho a state actor.  And the complaint does

not allege any such nexus.

For that reason, the complaint fails to allege a viable § 1983 action against

UBMD Ortho.  Nevertheless, because he is proceeding pro se, Bayon will be given

leave to amend his claims.  If Bayon wishes to bring an action against UBMD Ortho, he

must amend his complaint to include allegations connecting UBMD Ortho with state

action.  And if UBMD Ortho is a private entity, Bayon must allege facts demonstrating a

nexus between the state and UBMD Ortho sufficient to demonstrate that the driver's

license policy of UBMD Ortho constitutes state action.

d.     *Buffalo General*

Although it appears from Bayon's complaint that Buffalo General is affiliated with

Kaleida Health, Docket Item 1 at 1, the complaint does not allege a connection between

either of those entities and the state, let alone a nexus between the state and the

driver's license policy of Buffalo General.  For that reason, the complaint fails to allege a

viable § 1983 claim.  Nevertheless, because he is proceeding pro se, Bayon will be given leave to amend his claims.  If Bayon wishes to bring an action against Buffalo General, he must amend his complaint include allegations connecting Buffalo General with state action.  And if Buffalo General is a private entity, Bayon must allege facts demonstrating a nexus between the state and the driver's license policy of Buffalo General sufficient to demonstrate that the policy constitutes state action.

### 3.  Bayon's HIPAA Claims

HIPAA protects the confidentiality of medical records.  Health Insurance Portability and Accountability Act, Pub. L. No. 104–191, 110 Stat 1936 (1996).  It "does not contain any express language conferring privacy rights upon a specific class of individuals " but instead "focuses on regulating persons that have access to individually identifiable medical information and who conduct certain electronic health care transactions."  *Id.* at 571.  For that reason, HIPAA "does not provide a private right of action, but limits enforcement to the Secretary of Health and Human Services."  *Hills v. Liberty Mut. Ins.,* 2015 WL 1243337, at *4 (W.D.N.Y. Mar. 18, 2015) (internal citation omitted); s*ee also Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006).

Here, Bayon alleges that each of the defendants violated his HIPAA "rights" by "attaching/linking and storing identifying non-medical information to . . . [his] HIPA [sic] protected records."  Docket Item 1 at 3.  Because Bayon does not have a private right of action under HIPAA, his HIPAA claim is dismissed with prejudice.

## CONCLUSION

Bayon has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required affidavit.  The Court therefore grants his request to proceed in forma pauperis.  For the reasons stated above, however, his claims are not legally sufficient to proceed.  Therefore, Bayon's claims against the State of New York and SUNY are dismissed with prejudice, and his claims against UBMD Ortho and Buffalo General will be dismissed unless, by September 28, 2018, he files an amended complaint correcting the deficiencies noted above.

## ORDER

In light of the above,

IT HEREBY IS ORDERED that the plaintiff's motion to proceed in forma pauperis, Docket Item 2, is GRANTED; and it is further

ORDERED that the claims against the State of New York and SUNY are dismissed with prejudice; and it is further

ORDERED that Bayon is granted leave to file an amended complaint that addresses the shortcomings identified in this order no later than September 28, 2018; and it is further

ORDERED that if the plaintiff fails to file an amended complaint as directed

above by September 28, 2018, the claims against all defendants shall be dismissed with

prejudice without further order of the Court.

SO ORDERED.

Dated:       August 29, 2018
             Buffalo, New York

_s/Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE